IN THE CIRCUIT COURT FOR DAVIDSON COUNTY TENNESSEE,
AT NASHVILLE

FILED

2 09 MAY -7 AM II: 44

RICHARD R. ROOKER, CLERK

CATHERINE HUGHES DALTON, ]
        ]
     *Plaintiff* ]
        ]     NO. 09C1560
vs. ]
        ]
NORTHWESTERN MUTUAL ]
INSURANCE COMPANY, ]
        ]
     *Defendant* ]

## COMPLAINT FOR BREACH OF CONTRACT

    Comes the plaintiff, Catherine Hughes Dalton, and sues the defendant, Northwestern Mutual Insurance Company, for breach of contract and would state unto the Court as follows.

    1.  That the plaintiff, Catherine Hughes Dalton, is a citizen of Hendersonville, Sumner County, Tennessee.

    2.  The defendant, Northwestern Mutual Insurance Company, is a foreign insurance company doing business in Tennessee authorized to engage in the business of selling insurance in the State of Tennessee.

    3.  The subject matter of this suit is that two policies of occupational disability insurance were purchased by the plaintiff from defendant's agents. Specifically, policy number D671999 [Exh. "A"] was issued on May 16, 1989, for disability benefits in the amount of $2,000.00 per month and policy number D1146389 [Exh. "B"] issued on October 11, 1995 for disability benefits in the amount of $1,960.00 per month. The plaintiff's occupation was practicing law.



**EXHIBIT**
**1**

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 1 of 42 PageID #: 5

4. Both policies were in full force and effect when the plaintiff made a claim, in compliance with the terms of the policies, for the occupational disability benefits following knee surgery on April 1, 2005, with a prognosis of knee replacement after physical therapy did not prove to "rehabilitate" the knee some months later.

5. Specifically, the plaintiff has stage IV chondromalcia in the left knee and is completely "bone-on-bone" in the right knee (osteoarthritis). Plaintiff has undergone annual knee injections in five consecutive week intervals for a period from July, 2005, to present.

6. In June, 2005, the plaintiff suffered a neck injury, resulting in a bulging disc at C4-5 with radiculopathy to the left hand. Plaintiff underwent physical therapy for this condition.

7. In June, 2007, the plaintiff was diagnosed with bilateral carpal tunnel syndrome and intermittently wears wrist splints.

8. In June, 2008, the plaintiff was diagnosed with hypertension and is currently on medication for this condition.

9. Plaintiff has fully cooperated with Northwestern by providing medical authorizations and furnishing medical records, in addition to undergoing medical examination by a physician selected by the defendant to determine her ability to engage in her occupation as defined under the contract between the parties. The defendant paid partial disability benefits for a period between November, 2005, through April, 2008.

10. Benefits ceased because the defendant requested the plaintiff's tax returns for year 2007 in April, 2008. The plaintiff files a joint tax return with her spouse, Joseph M.

Dalton, Jr., a practicing attorney, but typically they do not file the return until October of each year. The applicable provision in the policies reads as follows. "The company may require proof, including income tax returns, of the amount of earned income for periods before and after the start of the disability."

11. The plaintiff's income tax returns had been provided for the years 2002, 2003 and 2004 prior to the defendant's paying partial disability benefits.

12. The plaintiff is totally disabled within the meaning of the terms and conditions of the aforesaid policies of insurance.

13. The plaintiff and her spouse had a legal partnership when they were both practicing law which was not dissolved until October, 2008, whereupon defendant was furnished the return(s); defendant concluded that an overpayment had been made to the plaintiff.

14. Since October, 2008, the defendant has written letters stating that the claims remain under consideration.

15. Since October, 2008, the plaintiff has paid all premiums for both policies through her insurance service account (ISA) with the defendant, Northwestern Mutual Insurance Company, and the premiums have been accepted by the defendant.

16. The plaintiff has met all conditions precedent for payment under the terms and conditions of the aforesaid policies of insurance.

17. Plaintiff alleges that the defendant's refusal to pay under the policies is a breach of the terms and conditions of the aforesaid contracts of insurance.

18. Defendant's refusal to pay under the policies is in bad faith, and violates T.C.A. §56-7-105.

19. Defendant's acts and practices, set forth above, violate the provisions of the Tennessee Consumer Protection Act, T.C.A. §47-18-104(b)(12) and (27), and the use or employment by the defendant of said unfair and deceptive acts and practices constitute willful or knowing violations under T.C.A. §47-18-109(a)(1)(3).

Wherefore, plaintiff prays:

1. That process issue and be served upon the defendant, Northwestern Mutual Insurance Company, through the Tennessee Department of Commerce and Insurance, Division of Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243, requiring an answer to these allegations within the time required by law.

2. That the plaintiff be awarded judgment against the defendant for all past due benefits, and premiums paid, together with prejudgment interest thereon.

3. That the plaintiff be awarded judgment for the defendant's bad faith refusal to pay the plaintiff's claim, not exceeding twenty-five (25%) of the past due benefits and premiums paid pursuant to T.C.A. §56-7-105.

4. That the plaintiff be awarded judgment in treble damages for violation of the Tennessee Consumer Protection Act T.C.A. §47-18-109(a)(3).

5. That the plaintiff be awarded reasonable attorney's fees and costs pursuant to T.C.A. §47-18-109(e)(1).

6. That the plaintiff be awarded discretionary costs of this cause, pursuant to T.R.C.P. 54.04(2).

7. For such further and other general relief to which the plaintiff may be entitled.

Respectfully submitted,

Breen & Morgan

Michael A. Breen, TN BPR# 24876
180    North    Belvedere    Drive
Gallatin, Tennessee 37066
615.452.7080
*mike@breenandmorgan.com*

I hereby certify that this is a true copy
of original instrument filed in my office
this _07_ day of _May_ 20_09_
RICHARD R. ROOKER Clerk
By _____
            Deputy Clerk

FILED

2009 MAY -7 AM 11: 48

The Northwestern Mutual Life Insurance Company agrees to pay
the benefits provided in this policy, subject to its terms and
conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely
payment of premiums to the first policy anniversary after the
Insured's 65th birthday and, during that period, can neither be
cancelled nor have its terms or premiums changed by the
Company.

PRESIDENT AND C.E.O.                     SECRETARY

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy --** Please read this policy carefully. The
policy may be returned by the Owner for any reason within ten
days after it was received. The policy may be returned to your
agent or to the Home Office of the Company at 720 East
Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy
will be considered void from the beginning and any premium
paid will be refunded.

MMD1



**Northwestern Mutual Life®**

| | | |
|---|---|---|
| INSURED | CATHERINE S HUGHES | |
| POLICY DATE | MAY 16, 1989 | |
| EXCLUSIONS--SEE SECTION 2. | | |

AGE AND SEX            30 FEMALE

POLICY NUMBER          D 671 999

**EXHIBIT "A"**

MMD1 (0187)

This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. BENEFITS**

Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 2. EXCLUSIONS**

**SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75**

**SECTION 4. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action.

**SECTION 5. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 6. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 7. THE CONTRACT**

Changes. Incontestability. Misstatement of age. Dividends. Definition of dates.

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

MMD1

BENEFITS AND PREMIUMS

DATE OF ISSUE - MAY 16, 1989

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|---|
| DISABILITY INCOME | $ | 2,000 $ | 580.00 | 35 YEARS |
| ADDITIONAL PURCHASE BENEFIT AMOUNT EACH PURCHASE DATE | | 1,000 | 41.00 | 20 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM.
SEE SECTION 3.

A PREMIUM IS PAYABLE ON THE POLICY DATE AND EVERY 12 POLICY MONTHS THEREAFTER.

THE FIRST PREMIUM IS       $621.00.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS.

| | |
|---|---|
| BEGINNING DATE | 91ST DAY OF DISABILITY IN THE FIRST 180 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO MAY 16, 2024, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |
| INITIAL PERIOD | TO MAY 16, 2024, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |

OWNER            .        CATHERINE S  HUGHES, THE INSURED

| INSURED | CATHERINE S  HUGHES | AGE AND SEX | 30 FEMALE |
|---|---|---|---|
| POLICY DATE | MAY 16, 1989 | POLICY NUMBER | D 671 999 |
| EXCLUSIONS--SEE SECTION 2. | | | |

MM D1 (0187)                        PAGE 3

# SECTION 1. BENEFITS

## 1.1 GENERAL TERMS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 describes the benefits of the policy and tells when they are payable. It also gives the meaning of several important terms that are used in the policy.

**Insured and Owner.** The Insured and Owner are named on page 3. The male pronouns used in this policy for the Insured and Owner apply to both males and females.

**Disabilities Covered by the Policy.** Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the care of a licensed physician other than himself during the time he is disabled;
- the disability results from an accident or sickness; and
- the disablity is not excluded under Section 2.

**Benefit Terms.** The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under the policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 1.7.

**Initial Period.** This is a period of time that starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3. The definition of total disability changes after the Initial Period.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more

than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation".

## 1.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period.

**Total Disability.** Until the end of the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.

**Benefit Amount for Partial Month.** When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 1.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period.

**Partial Disability.** The Insured is partially disabled when:

a. he is unable: to perform one or more of the principal duties of his occupation; or to spend as much time at his occupation as he did before the disability started;

and

b. he has at least a 20% Loss of Earned Income.

Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if: he is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started; or he has at least a 20% loss of time spent at his occupation.

If the Insured qualifies for both the Full and Proportionate Benefit, the Full Benefit only will be paid.

**Benefit Amount for Partial Month.** When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 9 of 42 PageID #: 13

## 1.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by the Insured's Loss of Earned Income and divided by his Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \quad X \quad \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

**Choice of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on the Insured's Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change his choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 1.5.

**Loss of Earned Income.** This is:

- the Insured's Base Earned Income; less
- his Earned Income for the month for which the Benefit is claimed.

Earned Income is credited to the period in which it is earned, not the period in which income is actually received.

**Earned Income.** Earned Income is:

- the sum of salary, wages, commissions, fees, bonuses, and other compensation or income earned by the Insured from all sources for work performed by him; less
- normal and customary business expenses.

It is determined before the deduction of federal, state and local income taxes.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or
- any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \quad X \quad \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**Consumer Price Index.** The "consumer price index for the year the disability started" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U") for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

**Proof of Earned Income.** The Company may require proof, including income tax returns, of the amount of Earned Income for periods before and after the start of the disability.

## 1.5 TRANSITION BENEFIT

The Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;
- the Insured has returned to full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 1.4.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 10 of 42 PageID #: 14

## 1.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

## 1.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:
- the Insured is totally disabled on the policy anniversary that follows his 60th birthday; and
- the total disability continues beyond the policy anniversary that follows his 65th birthday.

## 1.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:
- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 2. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:
- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

## 1.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:
- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 1.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

## 1.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

## 1.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

## 1.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is separate, and not a continuation of one that started earlier, if:
- the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time basis the principal duties of an occupation for at least 30 consecutive days; or
- the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 6 months after the end of the earlier one.

# SECTION 2. EXCLUSIONS

## 2.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:
- starts within two years after the Date of Issue; and
- results from an accident that occurred or from a sickness that appeared within two years before the Date of Issue and was not disclosed in the application.

A sickness is considered to have appeared if it would have caused a prudent person to seek medical attention.

## 2.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:
- is caused or contributed to by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 11 of 42 PageID #: 15

# SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:

- benefits are payable only for total disability; and
- the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 4. CLAIMS

## 4.1 NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. The Home Office is located at:

  720 East Wisconsin Avenue
  Milwaukee, Wisconsin 53202.

## 4.2 CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving notice of claim. If claim forms are not furnished within that period, written proof of disability may be made without the use of the Company's forms.

## 4.3 PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.

## 4.4 TIME OF PAYMENT OF CLAIMS

Benefits due under this policy will be paid monthly.

## 4.5 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to his estate.

## 4.6 MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as often as reasonably necessary in connection with a claim. This will be done by a physician of the Company's choice.

## 4.7 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 5. OWNERSHIP

## 5.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or his successor or transferee.

## 5.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

## 5.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will be charged with notice of the assignment only if a written assignment is received at the Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 5.2.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 12 of 42 PageID #: 16

# SECTION 6. PREMIUMS AND REINSTATEMENT

## 6.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund at Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 6.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or

- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and

- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty with Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and

- no later than 5 years after the due date of the unpaid premium.

NM D1                                  9

# SECTION 7. THE CONTRACT

## 7.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

## 7.2 INCONTESTABILITY

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 2.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and

- is not excluded from coverage by an Agreement for Limitation of Coverage.

## 7.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and

- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

## 7.4 MISSTATED AGE

If the age of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age.

## 7.5 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the state in which the Owner resides on that Date are amended to conform to such statutes.

## 7.6 DIVIDENDS

This policy will share in the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or

- paid to the Owner when premiums are being waived.

## 7.7 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## 7.8 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 3). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 14 of 42 PageID #: 18

# ADDITIONAL PURCHASE BENEFIT

## 1. THE BENEFIT

The Company will issue additional disability income insurance policies on the Insured, subject to the terms and conditions below. The Company will not refuse to issue these new policies due to changes in the Insured's health, activities, or occupation that occur after the date of Issue of this policy. However, as explained in section 4 of this Benefit, the issuing of these new policies is subject to the Company's financial underwriting standards.

In this Benefit, the words "this policy" mean the policy to which this Benefit is attached.

The premium for this Benefit is shown on page 3.

## 2. PURCHASE DATES

The Owner may purchase a new policy as of each Purchase Date that occurs after the Policy Date. There is a Purchase Date on each policy anniversary that is nearest the Insured's 25th, 30th, 35th, 40th, 45th, and 50th birthdays. The right to purchase a new policy as of a Purchase Date:

- expires on the 30th day after that Date; and
- may be used at an earlier time as an advance purchase.

The Company must receive an application and the first premium for each new policy not more than 60 days before, nor more than 30 days after, a Purchase Date.

## 3. ADVANCE PURCHASE

A new policy may be purchased before a Purchase Date, on the occurrence of certain events, if:

- this policy has been in force for at least one year; and
- the purchase is made more than one year after the last purchase of a new policy under this Benefit.

An advance purchase of a new policy may be made within 90 days after these events:

- the Insured's marriage;
- the birth of the Insured's child;
- the completion by the Insured of the legal adoption of a child; or
- an increase in the Insured's annual earned income of at least 20% since the Company last issued a disability income policy on the Insured.

To make an advance purchase of a new policy, there must be a future Purchase Date that has not been used. A new policy purchased in advance is in lieu of the new policy that otherwise could be purchased as of the next unused Purchase Date.

The Company must receive an application and the first premium for the new policy not more than 90 days after the marriage, birth, adoption or increase in income. The application must include proof of the marriage, birth, adoption or increase in income.

## 4. TERMS OF NEW POLICY

The terms below will apply to each new policy purchased under this Benefit.

**In General.** Each new policy will be in the form and have the same terms as policies being issued by the Company at the time of purchase. The terms available for each new policy will be based on the classification of risk of this policy. Subject to the limitations contained in the following paragraphs, the Owner may choose for each new policy:

- the amount of Full Benefit;
- the Maximum Benefit Period;
- the Beginning Date; and
- additional benefits.

**Limitations on Amount and Type of Coverage.** A new policy or additional benefit will be issued under this Benefit only if the Insured meets the Company's financial underwriting standards that are in effect at the time of the application for the new policy or benefit. These standards include the Insured's earned and unearned income, his net worth, the amount and types of disability coverage that the Insured has or for which he may be eligible after a qualifying period of employment, and the Company's issue limits.

**Full Benefit.** For each new policy:

- the minimum Full Benefit per month that may be purchased will be $200; and
- the maximum Full Benefit per month that may be purchased will be the Additional Purchase Benefit amount shown on page 3. For purposes of this paragraph, the amount of the Full Benefit issued will be deemed to include the amount of any Annually Renewable Disability Income Benefit or any Social Security Substitute Benefit issued as part of the new policy. The Owner may request a Full Benefit of up to twice the Additional Purchase Benefit amount shown on page 3 if there is an unused Purchase Date remaining. The purchase of the excess amount will be considered as an advance purchase of a new policy.

**Maximum Benefit Period.** The Owner may choose any Maximum Benefit Period for which the Insured qualifies under the Company's financial underwriting standards in effect at the time the new policy is purchased.

**Beginning Date.** The Owner may choose any Beginning Date offered at the time the new policy is purchased, provided the Beginning Date is not earlier than that of this policy.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 15 of 42 PageID #: 19

**Additional Benefits.** Other than the Additional Purchase Benefit, each new policy may be issued with additional benefits:

- which are then a part of this policy; and
- for which the Insured meets the Company's financial underwriting standards that are then in effect.

The amount of these additional benefits will be subject to the Company's issue rules then in effect.

**Limitations of Coverage.** Each new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**No Benefit for Existing Disability.** The new policy will cover a disability that starts after the new policy is issued if it is caused by an accident that occurs, or a sickness that first appears, after this policy was issued. The new policy will not cover a disability that exists at the time the new policy is issued.

**Premium.** The premium for each new policy is determined as of its date of issue by:

- the Company's premium rates then in effect;
- the plan and amount of insurance issued;
- the Insured's age at the time of issue of the new policy; and
- the classification of risk of this policy.

**Waiver of Premium.** If premiums are being waived for this policy at the time a new policy is purchased under this Benefit, premiums will also be waived for the new policy for as long as they continue to be waived for this policy.

**Effective Date.** Each new policy issued will take effect on the date the Company receives the application or the first premium, whichever is later.

### 5. PREMIUM REFUND

The Company will refund to the Owner all of the premiums paid for this Benefit if:

- the Owner applies for the refund within 90 days after the policy anniversary nearest the Insured's 50th birthday; and
- the Owner supplies proof that:
  - (1) the Insured has never qualified for a new policy under the limitations stated in section 4 of this Benefit; and
  - (2) the Insured has not purchased a disability income insurance policy from any company while this Benefit was in force.

### 6. TERMINATION

This Benefit will terminate on the earliest of the following dates:

- the date of termination of this policy;
- the policy anniversary that is nearest the Insured's 50th birthday;
- the date the final Purchase Date is used by advance purchase; or
- the date on which the Home Office receives the Owner's written request.

*Peter W. Bruce*

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

MMD 1,2 APB

# THE NORTHWESTERN MUTUAL LIFE
### INSURANCE COMPANY
### MILWAUKEE, WISCONSIN

**0063247**
**DISABILITY**
**INSURANCE APPLICATION**

No. _L 671999_

☐ Life & Disability Applications

---

**1. INSURED** (Print)  CATHERINE S. HUGHES
    First      Middle Initial      Last      ☐ Male ☑ Female

**2A. INSURED'S DATE OF BIRTH** ___ Month ___ Day _59_ Year    **2B. PLACE OF BIRTH** Quincy Mass
    (If other than USA, give name of country)

**3. APPLICANT,** if other than Insured
    First      Middle Initial
    Relationship to Insured _____

**4. RESIDENCE OF INSURED**
This address will be used for all of the Insured's policies.
Nashville    Davidson    TN
City      County    Street & No. or RFD    State    Zip Code

**5A. PREMIUM PAYER** Send premium and other notices regarding this policy
Insurance Service Account (ISA) Payer    **or**    to: ☐ Insured ☐ Owner ☐ Applicant
☐ Other _____
     Full Name
at: ☐ Insured's address in 4 or _____
     Street & No. or RFD
_____
City    State    Zip Code

**5B. PAYERS DAYTIME TELEPHONE NUMBER:**
(615) 320 5577
Area Code

**6.** Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life or disability insurance on the life of the Insured? ☐ Yes ☑ No    If yes, the last policy number is _____

---

**7. INSURED'S OCCUPATION**

A. What is the Insured's primary occupation? _Attorney_

B. List any other occupations of the Insured: _none_

C. What are the Insured's duties and the percent of time spent at each duty for each occupation? _100% legal_

D. Employer's Name: _Craig & Hughes_
    Address: ☐ Insured's or _205 14 Ave. N_
    address in 4    _Nashville_ _TN_ _37203_
    City    State    Street & No. or RFD    Zip Code

E. How long has the Insured been employed by this employer? _Partners since 8/87, prior to_
If less than 5 years, state the Insured's prior occupation(s) and employer(s). _that was employee_

F. What is the Insured's state of employment? _TN_ _(since 5/82)_
    (Give name of state)    _passed bar 7/87_

G. Is the Insured actively at work on a full-time basis without medical restrictions?
☑ Yes ☐ No    If no, explain. _____

H. Does the Insured intend to change occupation(s) or employer(s) within the next six months?
☐ Yes ☑ No    If yes, explain. _____

---

**8. Complete this question only if exercising an ADDITIONAL PURCHASE BENEFIT OPTION.**

A. List policy number(s) under which an option is being exercised: 1._____ 2._____ 3._____

B. This application is:    REGULAR APB — ☐ Regular Purchase    ☐ Advance Purchase (Complete item C below)
     BUSINESS APB — ☐ Disability Overhead Expense ☐ Buyout ☐ Keyperson

C. If this is an Advance Purchase, the event is:
☐ Marriage    Name of: ☐ Spouse
☐ Birth of child          ☐ Child _____ _____ _____
                 First    Middle Initial    Last
☐ Adoption of child   Date and place of marriage, birth, or final decree of adoption:
     ___/___/___    _____
     Month Day Year    City    State

Increase in Annual Earned Income
     $ _____ Actual — Two calendar years ago
     $ _____ Actual — One calendar year ago (Should agree with 17C)
     $ _____ Estimate — Current calendar year (Should agree with 17C)

D. Is the amount applied for more than the additional purchase option amount available? ☐ Yes ☐ No
If yes, what is the excess amount to be underwritten? $ _____

## 9. POLICY APPLIED FOR

| | Monthly Benefit | Maximum Benefit Period | Beginning Date | Initial Period To Age 65 | Initial Period To Age 70 |
|---|---|---|---|---|---|

**DISABILITY INCOME POLICY**

☐ Level premium  $ ~~220.00~~  ~~12 65~~  ~~91~~  ☐  ☐
☐ Step rate premium  $ _____
☐ Interim Term  $ _____  ☐  ☐
   Term period _____
     (1, 2, 3, 4, 5 yrs.)

**SOCIAL SECURITY SUBSTITUTE POLICY**

☐ Level premium  $ _____  to age 65  ☐
☐ Step rate premium  $ _____  to age 65  ☐

**DISABILITY OVERHEAD EXPENSE POLICY**

☐ Business  ☐ Professional  $ _____    **Aggregate Benefit**
                                                      ☐ 12 times monthly maximum
                                                      ☐ 24 times monthly maximum

☐ **KEYPERSON POLICY** (Complete Keyperson Supplement, form 90-1927)

☐ **BUYOUT POLICY** (Complete Buyout Supplement, form 90-1928)

## 10. ADDITIONAL BENEFITS

(If more than one policy is applied for, indicate to which policy(ies) each benefit should be attached.)

☑ Additional Purchase Benefit (APB)  $ 1,000  _____
                                        Amount on each Purchase Date

☐ Business Additional Purchase Benefit (BAPB) $ _____
                                          Amount on each Purchase Date

☐ Social Security Substitute Benefit (SSS)  $ _____
   SSS Beginning Date _____    Monthly Benefit
     (used only for Interim Term policy in cash sickness states)

☐ Annually Renewable Disability Income Benefit (ARDI) $ _____
                                                Monthly Benefit

☐ Indexed Income Benefit (IIB)

☐ Annually Indexing Benefit (AIB)

---

11. Northwestern Mutual Life is not able to issue the policy and any additional benefits as applied for, should the Company issue a policy if it can do so only in a smaller amount, or on a different plan, or without an additional benefit? ☑ Yes ☐ No

## 12. SPECIAL DATING

Prepaid
   ☐ Short term — Policy Date will coincide with ISA Payment Date.
   ☐ Short term to _____ / _____ / _____  ☐ Date to save age  ☐ Backdate to _____
                 Month  Day  Year                                       Month Day Year

Non-prepaid
   ☐ Specified future date _____ / _____ / _____  ☐ Date to save age  ☐ Backdate to _____
                        Month  Day  Year                                   Month Day Year

## 13. (Do not complete for Keyperson or Buyout)

The **OWNER** of the Disability Insurance policy(ies) will be:

☑ Insured  ☐ Applicant  ☐ Other _____
                                                        (Full Name)

## 14. PREMIUM INFORMATION

A. Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement with the same number as this application? ☐ Yes ☐ No

B. Payable: ☑ Annually ☐ Semiannually ☐ Quarterly

C. Will the Insured's employer pay the entire premium for this disability insurance?
   ☐ Yes  ☑ No  If yes, answer D. and E.

D. Will any part of the premium be included in the Insured's taxable income? ☐ Yes ☐ No

E. Will the Insured reimburse the employer for any part of the premium? ☐ Yes ☐ No

F. INSURED'S EMPLOYER is a: ☐ Sole Proprietor  ☑ Partnership  ☐ Corporation
   ☐ S Corporation — Date of election _____ / _____ / _____  ☐ Other, Specify _____
                                                  Month  Day  Year

B. Does the Insured have an ownership interest in the business? ☐ Yes ☑ No  If yes, what is the percent? _____%.

D063247

**INSURED**

Questions 16 to 19 are required because Northwestern Mutual Life's underwriting rules limit the amount of disability insurance on the insured in this company and elsewhere.

- **DISABILITY COVERAGES** List and describe all disability benefits including:
  - disability insurance in all companies, including Northwestern Mutual Life;
  - group disability insurance in all companies, including Northwestern Mutual Life;
  - private and government pension or retirement plans;
  - salary continuation plans;
  - association plans;
  - credit insurance plans;
  - overhead expense insurance; and
  - any other coverage which provides disability benefits.

Also include any coverage for which the insured will become eligible within the next five years after a qualifying period of employment has been met.

Identify: **(I)** In-force. **(P)** Pending or **(C)** Contemplated.     If none, check: ☑ **NONE.**

| Insurer | Type Disability Income, Overhead, Buyout, Keyperson, etc. | Benefit Amount | Benefit Period Accident | Sickness | I, P, C, or Date of Eligibility | Check if Offset by Social Security | Check if Non-contributory |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

B. Will the insurance applied for replace any Northwestern Mutual Life disability insurance?     ☐ Yes   ☑ No
   If yes. complete the Conditional Surrender form 17-0789, and the agent should submit any required papers.

C. Will the insurance applied for replace disability insurance from a source other than Northwestern Mutual Life?   ☐ Yes ☑ No
   If yes. complete the information below, and the agent should submit any required papers.

*When issuing any insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated on the stated date (usually the next premium due date). If the coverage listed below is not terminated on that date, any policy issued and accepted will be rescinded and all premiums will be returned. Northwestern Mutual Life may contact any listed insurer after the stated date to confirm that the coverage has been terminated.*

| Insurance Company | Type Disability Income, Overhead, Buyout, Keyperson, etc. | Group or Association Name | Policy Number | Amount to be Replaced | Premium Due Date/ Termination Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

**EARNED INCOME** For the prior calendar year, state the income and tax deductible business expense figures from the insured's occupation(s) as reported on the individual and business income tax returns (including supporting schedules and forms). Figures for the current calendar year should be the insured's best estimates of what will be reported for federal income tax purposes for the current year. Best estimates on this basis may also be used for the prior calendar year only if the insured has not yet completed a tax return for that year. Entries which do not agree with tax return information should be explained in Remarks. NOTE: Do not list undeclared income. Limit fringe benefits to those which are asked for in 17A. 1 below.

|  | Prior Calendar Year Jan. 1-Dec. 31 | Estimate Current Calendar Year Jan. 1-Dec. 31 |
|---|---|---|
| **1. EARNED INCOME from primary occupation:** | | |
| If the Insured is salaried, state the actual salary earned last year and the current salary year. If the salary has recently changed, show the date the change took effect in Remarks. | $ 15,600 | $ 15,600 |
| If the Insured is a commissioned salesperson, state the total commissions. | 0 | |
| State any bonus(es) that the Insured receives on a regular basis. Do not state if included above. | 0 | 0 |
| If the Insured is an unincorporated sole proprietor or a partner in an unincorporated partnership, state the Insured's share of gross income less the cost of goods sold. | 18,000 | 18,000 |
| State any pension plan contributions or deferred compensation amounts that would cease if the Insured were disabled. Give details and source of this income in Remarks. | 0 | |
| **2. CORPORATE EARNINGS:** | | |
| If the Insured owns 20% or more of the corporation employing the Insured, state the Insured's share of before-tax net corporate earnings. If the corporation had a loss for the year, put parentheses around the figures in each column, i.e. (losses). Give details of any unusual losses in Remarks. | | |
| **3. EARNED INCOME from other occupations listed in question 7B:** If none, so state. | | |
| **4. Total Earned Income:** Add amounts in 17A. 1, 17A. 2 and 17A. 3. | 33,600 | 33,600 |
| **B. EXPENSES** State the Insured's tax deductible business expenses from all occupations. If none, so state. | 6,000 | 6,000 |
| **C. NET EARNED INCOME** Line A. 3 minus line B. | 27,600 | 27,600 |
| **D. UNEARNED INCOME** State the Insured's net personal unearned income. This includes capital gains, interest, dividends, tax exempt unearned income, income from other investments, net rental income, pensions, annuities, and alimony. If none, so state. | 0 | 0 |

**E. NET WORTH** Is the Insured's net worth, exclusive of primary residence, greater than $4,000,000? (Include the Insured's assets less liabilities such as mortgages, loans and debts.)   ☐ Yes  ☒ No

If yes, complete section below. State fair market value less any associated indebtedness.

| | | | |
|---|---|---|---|
| Cash, savings, stocks, bonds | $ | Real estate (Exclude primary residence) | $ |
| Business equity (Exclude goodwill) | $ | Other (Give details in Remarks) | $ |
| Personal property | $ | | |

18. Has the Insured or any business owned in whole or in part by the Insured ever been in bankruptcy or named as debtor in a credit committee, composition agreement, or receivership action?   ☐ Yes  ☒ No

If yes, give details in Remarks, including whether a bankruptcy or other action involved a business or was personal. If bankruptcy, also state whether proceedings involved Chapter 7, 11, or 13.

Date Discharged: ___/___/___   Where _____
              Month Day Year         City         County         State

**REMARKS:**

D063247

**INSURED** | | | | | | | | | | | | | | | | | | | | | | |

19. **Complete this question only if applying for a DISABILITY OVERHEAD EXPENSE POLICY.**

A. What is the Insured's share of the overhead expenses? _____%

B. What is the amount of the Insured's share of the typical monthly tax deductible business expenses as reported on IRS _____ and supporting schedules? (For principal on business loans, give current monthly installment payments.)

$ _____ Rent

$ _____ Heat

$ _____ Telephone

$ _____ Electricity

$ _____ Professional Dues and License Fees

$ _____ Maintenance

$ _____ Real Estate Taxes

$ _____ Other Taxes (Specify)

_____

_____

$ _____ Interest on Business Loans

$ _____ Depreciation or Principal on Business Loans (Enter the larger of monthly depreciation expense or monthly principal on business loans.)

$ _____ Legal and Professional Fees

$ _____ Insurance Premiums

$ _____ Employees' Salaries (Professional DOE only) Do not include salaries of employees in the same occupation as the Insured

$ _____ Other Normal Expenses (Itemize)

_____

_____

$ _____ **TOTAL**

C. How many people are employed by this firm? (Include the Insured in the total.)
   Owners: Full-time _____ Part-time _____
   Non-Owners: Full-time _____ Part-time _____

D. How many of the employees are in the same occupation as the Insured? (Include the Insured in the total.)
   Owners: Full-time _____ Part-time _____
   Non-Owners: Full-time _____ Part-time _____

**REMARKS:**

20. Have you ever had life, disability, or health insurance
application modified, cancelled, or not renewed?
☐ Yes  ☑ No

**REMARKS**

When was your last previous examination or application
for life, disability, or accidental death insurance?
Year _____ Company _____

(Do not complete for disability insurance)
Indicate below whether any other life insurance on your
life is Individual (Ind) or Group (Grp) and identify In-Force (I),
Pending (P) or Contemplated (C).
If none check: ☐ NONE

| Insurer | Ind or Grp | Life Insurance Amount | Accidental Death Amount | I.P. or C |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

23. Marital Status — Single ☑ Widowed or Divorced  ☐ Married

24. Citizen of: ☑ U.S.A.  ☐ Other _____
If other: Visa Type _____ Visa No. _____

25. Do you contemplate leaving the United States of
America for travel or residence?
(If yes, explain in **REMARKS**)  ☐ Yes  ☑ No

26. (Do not complete for disability insurance)
A. What is your occupation(s)? _____
What are your duties? _____
B. Employer(s) _____
Name
_____
Street & No. or R.F.D.
_____
City      State      Zip Code
C. How long so employed? _____
(If less than 2 years, explain in **REMARKS**)

27. Are you a member of, or do you contemplate joining any
branch of the Armed Forces or reserve military unit?
(If yes complete Military Section 90-1)  ☐ Yes  ☑ No

28. Except as a passenger on a regularly scheduled flight
have you flown within the past 2 years, or do you con-
template flying in the future?
(If yes, complete Aviation Section 90-5)  ☐ Yes  ☑ No

29. Have you within the past 2 years participated in or do you
contemplate participating in racing (automobile, snow-
mobile, motorcycle, boat or go-kart) underwater or sky
diving, hang gliding, mountain or rock climbing or rodeo?
(If yes, complete Avocation Section 90-6)  ☐ Yes  ☑ No

30. A. What is your Automobile Driver's License Number?
# _____  State _J._
or, ☐ I do not have a driver's license.
B. In the past 5 years have you been in a motor vehicle
accident, charged with a moving violation of any motor
vehicle law, or had your license restricted or revoked?
(If yes, explain in C., D. and/or **REMARKS**)  ☐ Yes  ☑ No
C. Moving Violations within the past 5 years:

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, etc.) | Action (Citation, Fine, etc.) | Accident (Yes or No.) |
|---|---|---|---|
| | | | |
| | | | |

D. Details on any accidents: (Include date, citations
damage amounts, injuries.)

**REMARKS.** Give details of "Yes" answers. Identify question number.

D063247

**UNDERWRITING QUESTIONS TO BE ANSWERED BY INSURED – NONMEDICAL APPLICATIONS ONLY**

INSURED

# REDACTED

**REMARKS. Give details of "Yes" answers. Identify question number. State signs, symptoms and diagnosis of illness and name** and full address of each physician or practitioner consulted and the dates consulted:

| Question Number | Dates | Details or Conditions Including Treatment and Result | Physician or Practitioner's Name, Address City, State, Zip Code |
|---|---|---|---|
| | | | |

| Date | Details or Conditions Including Treatment and Result | Physician or Practitioner's Name, Address City, State, Zip Code |
|------|------|------|

# REDACTED

The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Statements in this application are representations and not warranties.

It is agreed that:

1. If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

2. If the premium is paid when the application is taken, no disability insurance will have been in effect if Section I. of the Conditional Disability Insurance Agreement applies.

3. For each separate period of disability, no benefits will be payable until the Beginning Date in question 9.

4. Receipt of an outline of coverage for the policy applied for is acknowledged.

5. No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

## INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about: (a) age; (b) medical history, health and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., other consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

I request to be interviewed if an investigative consumer report is done.

This form is valid for 30 months from the date it is signed. A copy of this form is as valid as the original and will be provided on request.

| | | |
|---|---|---|
| Signature of Insured (if other than Applicant) | | Signature of Applicant |

Signed at _____ _____ _____  Date 5, 16, 89
City    County    State    Month Day Year

Signature of Licensed Agent

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

MMD1

Countersigned by _____
Licensed Resident Agent

# Northwestern
# Mutual Life®

I hereby certify that this is a true copy of original instrument filed in my office this _____ day of _____ 20__
RICHARD R. HOOKER Clerk
By _____
Deputy Clerk

FILED

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

*James A. Ericson*
PRESIDENT AND C.E.O.

*John M. Bremer*
SECRETARY

## IMPORTANT NOTICE CONCERNING STATEMENTS IN THE APPLICATION FOR YOUR INSURANCE

Please read the copy of the application attached in this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. The application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy** -- Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

QQ.DI



Northwestern Mutual Life®

| | | |
|---|---|---|
| INSURED | Catherine S Hughes | AGE AND SEX 37 Female |
| POLICY DATE | October 11, 1995 | POLICY NUMBER D1 146 389 |
| PLAN | Disability Income | |

Exclusions--See Section 3.

QQ.DI

**EXHIBIT "B"**

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company. Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. GENERAL TERMS AND DEFINITIONS**

Insured and Owner. Terms on schedule of Benefits and Premiums. Regular Occupation. Total Disability. Partial Disability. Licensed Physician. Consumer Price Index.

**SECTION 2. BENEFITS**

Disabilities covered. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime Benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 3. EXCLUSIONS AND LIMITATIONS**

**SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75**

**SECTION 5. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Limits on when you may start a legal action.

**SECTION 6. OWNERSHIP**

Rights of Owner. Assignment as collateral.

**SECTION 7. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums. Refund of unused premium at death. How to reinstate the policy.

**SECTION 8. THE CONTRACT**

Changes. Time limit on certain defenses. Change of plan. Conversion to level premium disability insurance. Dividends. Definition of dates. Termination.

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

QQ.DI

## BENEFITS AND PREMIUMS

### Date of Issue - October 11, 1995

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| Disability Income | $  1,960 | $  1,123.60 | 29 Years |

Renewal of coverage beyond age 65 may require an increase in the premium. See Section 4.

A monthly premium, plus an ISA administrative charge, is payable on October 11, 1995 and on the 11th day of every calendar month after that. The monthly premium equals the annual premium multiplied by .0856.

The first monthly premium is $96.18.

The premium for this policy is on a nonsmoker basis for Occupation Class 6A.

| | |
|---|---|
| BEGINNING DATE | 91st day of disability in the first 180 days after the start of disability. |
| MAXIMUM BENEFIT PERIOD | To the first policy anniversary (October 11, 2024) following the Insured's 65th birthday, but not less than 24 months of benefits. |
| INITIAL PERIOD | (Coverage for the Insured's own occupation) |
| | To the first policy anniversary (October 11, 2024) following the Insured's 65th birthday, but not less than 24 months of benefits. |

OWNER            Catherine S Hughes, The Insured

STATE OF ISSUE   Tennessee

| | | | |
|---|---|---|---|
| INSURED | Catherine S Hughes | AGE AND SEX | 37 Female |
| POLICY DATE | October 11, 1995 | POLICY NUMBER | D1 146 389 |
| PLAN | Disability Income | | |

Exclusions--See Section 3.

# SECTION 1. GENERAL TERMS AND DEFINITIONS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 gives information about or the meaning of several terms that are used in the policy.

## 1.1 INSURED AND OWNER

The Insured and Owner are named on page 3.

## 1.2 TERMS ON SCHEDULE OF BENEFITS AND PREMIUMS

The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under this policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date. Days of disability due to different causes will be accumulated to satisfy the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 2.7.

**Initial Period.** (Coverage for the Insured's own occupation.) During the Initial Period the definition of total disability is based on the Insured's regular occupation at the time the disability starts. The Initial Period starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3.

## 1.3 REGULAR OCCUPATION

The words "regular occupation" mean the occupation of the Insured at the time the Insured becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time the disability starts will be combined together to be "the regular occupation."

If the Insured is exclusively engaged in:
- a medical or dental specialty for which board certification is available; or
- the specialty of trial law

that specialty is the "regular occupation."

## 1.4 TOTAL DISABILITY

Until the end of the Initial Period, the Insured is totally disabled when unable to perform the principal duties of the regular occupation. After the Initial Period, the Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation.

If the Insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as partially disabled.

## 1.5 PARTIAL DISABILITY

The Insured is partially disabled when:
a. the Insured is unable:
  - to perform one or more but not all of the principal duties of the regular occupation; or
  - to spend as much time at the regular occupation as before the disability started;
b. the Insured has at least a 20% Loss of Earned Income; and
c. the Insured is gainfully employed in an occupation.

During a period of partial disability following the Beginning Date, the Proportionate Benefit may be payable. Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:
- the Insured is unable to perform one or more principal duties which accounted for at least 20% of the time the Insured spent at the regular occupation before the disability started; or
- the Insured has at least a 20% loss of time spent at the regular occupation.

## 1.6 LICENSED PHYSICIAN

Licensed Physician means a physician, other than the Insured, who is acting within the scope of his or her license. If disability is due to a mental or nervous condition, Licensed Physician means psychiatrist or licensed doctoral level psychologist other than the Insured.

## 1.7 REGULAR CARE OF A LICENSED PHYSICIAN

Regular Care of a Licensed Physician means personal care and attention appropriate to the condition causing disability. This care must be at such intervals and frequency as will lead to the Insured returning to the principal duties of the regular occupation.

If the Company determines that Regular Care of a Licensed Physician would be of no further use to the Insured, the requirement of such care will be waived.

QQ.DI

5

## 1.8 CONSUMER PRICE INDEX

A consumer price index is used to determine the Indexing Factor as described in Section 2.4 of this policy. The consumer price index used in this policy is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U"). The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

The "consumer price index for the year the disability started" is the CPI-U for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

## 1.9 SOCIAL SECURITY SUBSTITUTE (SSS) BENEFIT

This policy may have the SSS Benefit. If so, the schedule of Benefits and Premiums will show the Full Benefit, Beginning Date and Maximum Benefit Period applicable to the SSS Benefit. The terms and conditions of the SSS coverage are set out in the SSS Benefit.

# SECTION 2. BENEFITS

## 2.1 DISABILITIES COVERED BY THE POLICY

Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the Regular Care of a Licensed Physician during disability;
- the disability results from an accident that occurs or a sickness that first appears while this policy is in force; and
- the disability is not excluded under Section 3.

## 2.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable at the end of the month for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 2.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable at the end of the month for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period. When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

## 2.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by Loss of Earned Income and divided by Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\frac{Full}{Benefit} \quad X \quad \frac{Loss\ of\ Earned\ Income}{Base\ Earned\ Income}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

**Choice Of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change the choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 2.5.

**Loss Of Earned Income.** This is:

- the Insured's Base Earned Income; less
- the Insured's Earned Income for the month for which the Benefit is claimed.

The Loss of Earned Income must be caused by the disability for which claim is made.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 30 of 42 PageID #: 34

**Earned Income.** For an Insured who is an employee, Earned Income is:

- the sum of salary, bonuses and commissions paid to the Insured as reported for federal income tax (FIT) purposes; plus

- amounts earned by the Insured which would have resulted in current taxable employee compensation, but instead were contributed by the Insured to a benefit or retirement plan; less

- unreimbursed employee business expenses as reported by the Insured for FIT purposes.

For an Insured who is an owner of a sole proprietorship or a partnership interest, Earned Income is based on amounts as reported for FIT purposes on individual and business tax returns and is:

- the share of gross income from each business, earned by the Insured or others under the Insured's supervision or direction; less

- the Insured's share of normal and customary business expenses. (However, any form of compensation for the Insured's spouse is not deducted as an expense unless the spouse was a paid employee working at least 30 hours per week in the business during the 30 day period before the start of disability.)

For an Insured who is an owner-employee of a corporation or who has Earned Income from more than one source, Earned Income is calculated using all five items of Earned Income as described above.

For amounts in the current or recently ended tax year which have not yet been reported on FIT returns, the calculations above will be based on amounts that will be reported for FIT purposes. Earned Income is determined before the deduction of federal, state and local income taxes. Earned Income does not include forms of unearned income such as: benefits from disability coverage, from deferred compensation, or from retirement plans; dividends; interest; or annuity payments.

At the time a claim for a Proportionate Benefit begins, the Owner must choose:

- to have all items of Earned Income, as described above, credited to the period in which they are earned (accrual basis); or

- to have all items of Earned Income, as described above, credited to the period in which they are received (cash basis). However, income received during a period of disability for work performed prior to the start of the period of disability will not be included in income during the period of disability.

The accounting basis chosen by the Owner will be used to determine both Base Earned Income and Earned Income during a period of disability.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or

- any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by

- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \quad \times \quad \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

## 2.5 TRANSITION BENEFIT

The Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;

- the Insured has returned to continuous full-time employment;

- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and

- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 2.4. A Loss of Earned Income is used to determine the amount of Transition Benefit to the extent that it is caused by the disability from which the Insured has recovered.

A disability occurring while the Transition Benefit is payable is considered as a continuation of the previous disability.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 31 of 42 PageID #: 35

## 2.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

## 2.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows the 60th birthday of the Insured;

- the total disability continues without interruption to the policy anniversary that follows the 65th birthday of the Insured; and

- the total disability continues without interruption beyond the policy anniversary that follows the 65th birthday of the Insured.

## 2.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, the Insured will be considered totally disabled if the Insured incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 3. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

## 2.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or

- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 2.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

## 2.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

## 2.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

## 2.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is considered a separate disability if:

- Full, Proportionate, or Transition Benefits were, but no longer are, payable for the earlier disability; and either

  - the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time continuous basis the principal duties of an occupation for at least 30 consecutive days; or

  - the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 12 months (or 6 months if this contract has a 24 month or 60 month Maximum Benefit Period) after Full, Proportionate, or Transition Benefits cease being payable for the earlier one.

All other disabilities are considered to be a continuation of the prior disability.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 32 of 42 PageID #: 36

# SECTION 3. EXCLUSIONS AND LIMITATIONS

## 3.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- results from an accident that occurred within five years before the Date of Issue; or
- results from a sickness that existed within five years before the Date of Issue

if the accident or sickness was not disclosed or was misrepresented in the application.

A sickness is considered to have existed if:

- symptoms were present that would have caused a prudent person to seek diagnosis, care or treatment; or
- medical advice or treatment was recommended or received from a health care practitioner.

## 3.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused or contributed to by an act or incident of war, declared or undeclared; or

- is excluded from coverage by an Agreement for Limitation of Coverage.

There will be no benefits for a disability or loss for any period the Insured is incarcerated.

## 3.3 LIMITATION REGARDING PREGNANCY AND CHILDBIRTH

For a disability caused by normal pregnancy or childbirth, the Beginning Date will be the 91st day of disability or the Beginning Date shown on page 3, if later. This limitation does not apply to a disability caused by complications of pregnancy or childbirth.

Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. For purposes of this policy, a non-elective caesarian birth is a complication of pregnancy. Examples of conditions that are not complications include false labor, fatigue, and morning sickness.

# SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if:

- the Insured is actively and gainfully employed at least 30 hours per week; and
- premiums to renew this policy are paid.

This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed, benefits are provided only for total disability. The total disability must be one:

- which occurs while this policy is in force; or
- which commences within 30 days of an accident which occurred while this policy was in force, provided the disability results from the accident.

The premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 33 of 42 PageID #: 37

# SECTION 5. CLAIMS

## 5.1 CLAIM FOR POLICY BENEFITS

**Notice Of Claim.** To start a claim for benefits, written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. Mail sent to the Home Office should be addressed as follows:

    The Northwestern Mutual Life Insurance Co.
    Attn: Disability Benefits
    720 East Wisconsin Avenue
    Milwaukee, Wisconsin 53202

**Proof Of Loss.** For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary to determine whether benefits are payable, and if so, the amount of the benefits. The proof of loss will include information about the Insured's health, occupational duties, income both before and after the disability started (including income tax returns for the Insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits along with other information as may be required by the Company from time to time. The Company will also need to be provided information as described below under "Other Requirements."

The Company will furnish claim forms for an initial written proof of loss within 15 days after receiving notice of claim. These forms will need to be completed by the Owner, the Insured and the Insured's physician. If these forms are not furnished within the 15 day period, this initial written proof of loss may be made without the use of the Company's forms.

The Company will furnish additional claim forms from time to time while a claim for monthly benefits continues.

Written proof of loss must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible. In any event, the proof required must be given no later than one year and 90 days after the end of each monthly period for which which benefits are claimed unless the Owner was legally incapacitated.

**Other Requirements.**

- **Authorizations.** From time to time, the Company will furnish the Insured with authorizations to obtain information. These authorizations must be signed by the Insured and returned to the Company.
- **Medical Examination.** The Company may have the Insured examined by a health care practitioner.
- **Personal Interview.** The Company may conduct a personal interview of the Insured.
- **Financial Examination.** The Company may have the financial records of the Insured or the Owner examined.

Any examination or interview will be performed:

- at the Company's expense;
- by a health care practitioner, interviewer or financial examiner of the Company's choice; and
- as often as is reasonably necessary in connection with a claim.

## 5.2 TIME OF PAYMENT OF CLAIMS

When the Company has received satisfactory proof of loss and other information as required by section 5.1 and the Company has determined that benefits are payable, the Company will pay benefits on a monthly basis.

## 5.3 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to the Owner's estate.

## 5.4 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of loss has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 6. OWNERSHIP

## 6.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or the Owner's successor or transferee.

## 6.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

## 6.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at its Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 6.2.

QQ.DI

Case 3:09-cv-00547   Document 1-1   Filed 06/12/09   Page 34 of 42 PageID #: 38

## 8.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and

- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

## 8.4 CONVERSION TO LEVEL PREMIUM DISABILITY INSURANCE

The Owner may convert the Annually Renewable Premium (ARDI) coverage, if any, shown on page 3 to a level premium disability income insurance policy. The conversion may be done on or before the the conversion date shown on page 3. No evidence of insurability will be required. The right to convert is not available if the premiums are being waived for this policy.

A portion of the ARDI coverage may be converted, subject to conditions set by the Company.

The new policy will be in the form and have the same terms as policies being issued by the Company at the time of conversion. The terms available for the new policy will be based on the classification of risk of this policy. The new policy will have the following terms:

- the amount of the Full Benefit will be the amount of benefit converted;

- the Maximum Benefit Period and Initial Period will not be longer than the Maximum Benefit Period and Initial Period of this policy;

- the Beginning Date will be any Beginning Date offered at the time the new policy is purchased that is not earlier than the Beginning Date of this policy; and

- the new policy will be issued with additional benefits which are on the converted coverage and which are then available to new Insureds.

**Limitations Of Coverage.** The new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**Premium.** The premium for the new policy is determined as of its date of issue by:

- the Company's premium rates then in effect in the state where the Insured then resides;

- the Insured's age on the policy date of the new policy;

- the plan and amount of insurance issued; and

- the classification of risk of this policy.

**Cost Of Conversion.** The cost of conversion will be the first premium for the new policy less any dividend and premium credit for the benefit amount converted.

**Effective Date.** The new policy takes effect on the date the Company receives the application or the cost of conversion, whichever is later.

## 8.5 MISSTATED AGE OR SEX

If the age or sex of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age or sex.

## 8.6 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the State of Issue on that Date are amended to conform to such statutes. The State of Issue is shown on page 3.

## 8.7 DIVIDENDS

This policy will receive its share of the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or

- paid to the Owner when premiums are being waived.

## 8.8 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

## 8.9 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 4). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

# DI DISABILITY INSURANCE APPLICATION
### Northwestern Mutual Life Insurance Company • Milwaukee, Wisconsin

- Complete entire application for individual business and MultiLife Association Business.
- Complete the application omitting the shaded areas for MultiLife Employer Sponsored Business.

For MultiLife Business, complete Supplement
#17-1052 - Enter MultiLife
Discount Plan Number: _____

| NEW ISSUE | X APB OPTION | CONVERSION |
|---|---|---|
| GROUP LTD APB OPTION | ARDI □ Interim Term | □ Group LTD  Original Policy Number: _____ |

Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life or disability insurance on the life of the Insured?  **X** Yes  ___ No   If yes, the last policy number is D 671 999

## 1 SECURED

A. Name: Mr. ___ **X** Mrs. ___ Ms. ___  Dr ___ Other ___   **FIRST** CATHERINE  **MIDDLE INITIAL** S  **LAST** HUGHES

B. **X** Female ___  C. Social Security Number: _____  D. Birthdate: 59  E. State of Birth (or Foreign Country): MASS
   Male ___

F. Present Residence:  **STREET & NO OR RFD**  **CITY** HENDERSONVILLE  **COUNTY** SUMNER  **STATE** TN  **ZIP**

## 2 APPLICANT - IF OTHER THAN INSURED

A. Name: Mr ___ Mrs. ___ Ms. ___  Dr ___ Other ___   **FIRST**  **MIDDLE INITIAL**  **LAST**

B. Relationship to Insured: _____  C. Address:  **STREET & NO OR RFD**  **CITY**  **STATE**  **ZIP**

## 3 OWNER - DO NOT COMPLETE FOR KEYPERSON OR BUYOUT

The OWNER of the policy(ies) will be:  **X** Insured  ___ Applicant  ___ Other (Full Name and Relationship) _____

## 4 PREMIUM PAYER

A. Send premium notices and other notices for this policy(ies):
   TO: **X** Insurance Service ___  ___ Insured  ___ Applicant  ___ Owner  ___ Other_____
   Account (ISA)  OR  AT: ___ Insured's Address in #1F.  ___ Applicant's Address in #2C.  **FIRST NAME**
   Payer ___  ___ Other _____  **STREET & NO OR RFD**  **CITY**  **STATE**  **ZIP**

B. Daytime Telephone Number:  Area Code (615) 256 - 7600
C. Taxpayer ID Number: (See TIN Instructions p.14)  **X** Insured's SS# in 1C, or  ___ Other: #_____  **SS NUMBER**

D. Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement with the same number as this application?  ___ Yes  **X** No   E. Payable: **X** Annually  ___ Semiannually  ___ Quarterly

F. Will the Insured's employer pay the whole premium for this disability insurance? If yes, answer G and H.  ___ Yes  **X** No

G. Will any part of the premium be included in the Insured's taxable income?  ___ Yes  **X** No

H. Will the Insured reimburse the employer for any part of the premium?  ___ Yes  **X** No

## 5 OCCUPATION

A. Name of Employer or Business: EASON, LAWSON FISHBURN + DALTON   B. Product or service the employer provides: Legal Services

C. Employer's Address:  **STREET & NO OR RFD** 222 SECOND AVE. N., STE 350  **CITY** NASHVILLE  **STATE** TN  **ZIP** 37261

D. PRIMARY Occupation: ATTORNEY   E. Other Occupations:

F. Professional Degree or Credentials:   G. Professional Specialty, if any:

H. Describe Insured's occupational duties by stating the percentage of time spent on these duties:
   ___ % Managerial/Admin.  ___ % Travel  15 % Sales  Courtroom,
   ___ % Keyboard work  ___ % Physical/Manual  85 % Other: Research / Writing / Preparing Briefs

I. Average number of hours worked per week 40 hrs.   J. Business located in the home? ___ Yes **X** No
   Average hours per week worked outside of home _____

K. Length of time: In current occupation 8 YS   With current employer 3 YS   L. State in which employed: TN
   If less than 3 years, state prior occupations and employer(s) for the last 3 years.

M. Does the Insured intend to change occupation, employer, or employment status in the next six months? ___ Yes **X** No

**It is recommended that you ...**

read your policy.

contact your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, WI 53202, (414) 271-1444 for any service you may require in connection with this policy.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

QQ.DI.TN

Countersigned by _____
                              Licensed Resident Agent



Northwestern
Mutual Life®

i hereby certify that this is a true copy
of original instrument filed in my office
this ____ day of _____ 20__
RICHARD R. ROOKER Clerk
By _____
                        Deputy Clerk

Copy

| CIRCUIT COURT SUMMONS | NASHVILLE, TENNESSEE |

FILED

**STATE OF TENNESSEE**
**DAVIDSON COUNTY** 2009 MAY -7 AM 11:50
**20TH JUDICIAL DISTRICT**
RICHARD R. ROOKER, CLERK

☒ First
☐ Pluries

Catherine Hughes Dalton

CIVIL ACTION
DOCKET NO.: 09C1560

_____
Plaintiff.

**Method of Service:**

☐ Davidson County Sheriff

**Vs.**

☐ Out of County Sheriff

Northwestern Mutual Insurance Company

☐ Secretary of State

Serve Through the Dept. of Commerce & Insurance

☐ Certified Mail

500 James Robertson Parkway

☐ Personal Service

Nashville, TN 37243-0565

☒ Commissioner of Insurance
_____
Defendant

D1  $15.

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 05-07-09

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Michael A. Breen |
| | 180 N. Belvedere Drive, Suite 1 |
| | Address |
| | Gallatin, Tennessee 37066 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
**SHERIFF**

♿ If you have a disability and require assistance, please contact 862-5204.



Copy
*Davidson County*
P.O. Box 196303
Nashville, Tennessee 37219-6303

**RICHARD R. ROOKER**
CIRCUIT COURT CLERK
1 Public Square, Room 302
615-862-5181

May 8, 2009

Tennessee Division of Consumer Affairs
500 James Robertson Parkway, Fifth Floor
Nashville, TN 37219

RE: Catherine Hughes Dalton
vs.                    Docket No. 09C-1560
Northwestern Mutual Insurance Co.

Dear Sirs:

In accordance with T.C.A. §47-18-109, this is your notice that the above styled Consumer Protection Act Complaint has been filed in the Circuit Court of Davidson County, Tennessee. The enclosed Complaint was filed in our office on May 7, 2009, and has been assigned to the First Circuit Court for disposition.

Sincerely,

Richard R. Rooker

RRR/cgf

Enclosure



**Copy**

CIRCUIT COURT SUMMONS             NASHVILLE, TENNESSEE

**STATE OF TENNESSEE**
**DAVIDSON COUNTY**
**20TH JUDICIAL DISTRICT**

FILED
2009 MAY -7 AM 11:50
RICHARD R. ROOKER, CLERK

[X] First
[ ] Alias
[ ] Pluries

Catherine Hughes Dalton

CIVIL ACTION
DOCKET NO.: 09C1560

_____ Plaintiff

**Vs.**

Northwestern Mutual Insurance Company

Serve Through the Dept. of Commerce & Insurance

500 James Robertson Parkway

Nashville, TN 37243-0565

_____ Defendant

**Method of Service:**

[ ] Davidson County Sheriff

[ ] Out of County Sheriff

[ ] Secretary of State

[ ] Certified Mail

[ ] Personal Service

[X] Commissioner of Insurance

**To the above named Defendant:**

**You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.**

**In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.**

ISSUED: 05·07·09

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Michael A. Breen |
|---|---|
| | 180 N. Belvedere Drive, Suite 1 |
| | Address |
| | Gallatin, Tennessee 37066 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20___

_____
SHERIFF

[♿] **If you have a disability and require assistance, please contact 862-5204.**

Copy

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the ___13___ day of ___MAY___, 20_09_, I:

[ ] served this summons and complaint/petition on _SERVED BY LEAVING COPY_ in the following manner:

_W/COMM. OF INS_

DEPT. OF COMMERCE AND INSURANCE _Amanda Peek_

[ ] failed to serve this summons within 90 days after its issuance because

Roger Dixon
Deputy Sheriff

Sheriff/Process Server _1348-1403_

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20_____ I sent, postage prepaid by

registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No.

_____ to the defendant, _____. On the _____ day of

_____, 20_____, I received the return receipt for said registered or certified mail, which had been signed

by _____ on the _____ day of _____, 20_____. Said return

receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20_____.

_____

_____NOTARY PUBLIC or _____DEPUTY CLERK

MY COMMISSION EXPIRES: _____

_____

PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

### NOTICE

TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH

RETURN

RECEIPT

HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF DAVIDSON

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

RICHARD R. ROOKER, CLERK

(To be completed only if
copy certification required.)

By: _____ D.C.

**Copy**



STATE OF TENNESSEE
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

FILED

2009 MAY 26 PM 2:22

RICHARD R. ROOKER, CLERK

C. Haf _____ D.C.

May 20, 2009

Northwestern Mutual Life Ins Company
720 East Wisconsin Ave, Room S616
Milwaukee, WI 53202
NAIC # 67091

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7008 3230 0002 4320 9698
Cashier # 3153

Re: Catherine Hughes Dalton  V.  Northwestern Mutual Life Ins Company

Docket # 09C1560

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Breach Of Contract Complaint was served on me on May 19, 2009 by Catherine Hughes Dalton pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of Davidson County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Davidson County
    506 Metro Courthouse
    Nashville, Tn 37201

Service of Process 615.532.5260